UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EMERGYSTAT OF SULLIGENT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CV 05-B-1319-S |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 12.)[1] Plaintiff Emergystat of Sulligent, Inc., has filed this action alleging that the determination of the Internal Revenue Service, which sustained the decision to levy plaintiff's assets, was arbitrary and capricious. Defendant has moved for summary judgment on the ground that, "the IRS Office of Appeals did not abuse its discretion in rejecting the taxpayer's 'collection due process' challenge to the IRS's proposal that it involuntarily collect the taxpayer's unpaid employment taxes." (Doc. 12 at 1.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 12), is due to be granted.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Emergystat is an Alabama corporation with its principal place of business in Vernon, Alabama. (Doc. 1 ¶ 2.) Emergystat's primary business is providing ambulance service in Alabama, Florida, Kansas, Louisiana, Mississippi, Tennessee, and Virginia. (Doc. 12, Part 9 at 272.) It is a subsidiary of Bad Toys Holding, Inc. (*Id*.)

On December 20, 2004, the IRS sent Emergystat its Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing. (*Id*., Part 13.) It informed Emergystat that it owed $ 2,681,834.50 in unpaid employment taxes, penalties, and interest.[2] (*Id*. at 366.) Also, the IRS informed Emergystat of its right to appeal pursuant to Internal Revenue Code § 6330, 26 U.S.C. § 6330. (*Id*. at 365.)

Emergystat filed a timely request for a collection due process hearing from the IRS Office of Appeals. (Doc. 12, Part 11 at 360.) Emergystat alleged that "execution of the levy by the IRS will cause the company to cease operations." (*Id*., Part 9 at 273.) Ceasing operations, Emergystat claimed, would result in many rural communities losing access to emergency ambulance services and would leave the families of its 1,250 employees without any income, also adversely impacting these communities. (*Id*. at 272.) As an alternative plan, Emergystat proposed the following:

> Management of the Company is seeking new funding to allow payment of most or all of the IRS Trust Fund as quickly as possible. While we are

---

[2] Emergystat does not dispute that the taxes are owed. (Doc. 12, Part 1 at 2, ¶ 2; doc. 14 at 1 ¶ 2.)

working on this new financing, the Management of the Company will complete the following in an effort to satisfy the Trust Fund obligations of the Company.

> 1. Management of the Company will continue to file monthly 941's, keeping these newly incurred trust fund obligations current.
>
> 2. The Company will continue to make monthly payments of $25,000 on the old Trust Fund obligations as it has been.
>
> 3. The Company will pay $200,000 each 60 days towards the old trust fund obligation beginning April 29, 2005.

(*Id*. at 273.)

The collection due process hearing was originally scheduled for March 9, 2005; it was rescheduled to allow Emergystat additional time to work with a prospective lender. (*Id*., Part 6 at 144, 194.) A hearing was held on April 1, 2005 between T. Alan Walls, Chief Financial Officer of Emergystat, (*id*., Part 6 at 138), and Thomas M. Owens, an IRS Appeals Officer, (*id*., Part 5 at 035.) Owens's notes of the meeting state –

> There was much discussion but the bottom line is they are attempting to borrow enough money to pay off GE[3] and IRS. He said they owe GE about 1.8 million – (it has priority over tax lien). They owe IRS about 2.3 mil. . . . There is about 4.1 mil owed to GE [and] IRS, but GE has priority so if they can't borrow 4.1, IRS will not get immediate FP ["full payment"]. They have 3 or 4 loan applications under consideration. They expect a response on [one] by [April 4th and] on all within next 2 weeks. He said [one] lender has mentioned a possible need for a lien subordination.

---

[3]"GE" is GE Commercial Finance. (Doc. 1, ¶ 10.)

(Doc. 12, Part 5 at 35.) Owens noted that he "agreed to give [Emergystat] 2 or 3 weeks to see what they [could] work out provided [Emergystat] remain[ed] current." (*Id*. at 36.)[4]

After the hearing, Owens checked to see if Emergystat was current with its tax obligations. (*Id*., Part 6 at 34.) He noted a payment due in early April had been received a week late. (*Id*.) He asked Walls to contact him. (*Id*.) Two days later, he noted:

> Walls called. . . . He acknowledged they missed a deposit the first of April. He said they had a large insurance bill to pay. They will catch up next week he said. I told him if they don't, there is nothing I can do for them. He will keep me informed. Will wait [and] watch for a couple of weeks.

(*Id*. at 029.)

A week later, on April 27, Owens noted that Emergystat had "made no deposits for 200506 [the quarter ending June 2005]." (*Id*., Part 6 at 027.) He noted that he had left a voice-mail message for Walls, telling him that he would be "closing the case," and he noted, "TP [taxpayer] has had several warnings about staying current [and] does not appear to be doing so." (*Id*.) Five days later, Owens noted:

> No response from TP. . . . TP made 2 deposits last week on 200506, totaling $195,397. During January, the last month of 200503 [the quarter ending March 2005], TP made deposits totaling $290,566. Total payments for 200503 were $1,110.179.00. It still seems like that the TP is under deposited for 200506 by a substantial amount.

---

[4]Emergystat contends that it needed more than a few weeks to secure a loan to pay its past-due taxes. (*See* doc. 14 at 9.) For reasons set forth below, the court need not decide whether the parties actually agreed to a short turn around on the loans because Emergystat's appeal was denied based on its failure to stay current with its employment taxes. (Doc. 1, Ex. A at 4.)

It is time for a chat with Walls, including an update on the loan application.

(*Id*.)

On May 12, Owens noted that only $195,000 had been credited toward Emergystat's employment taxes for the quarter ending June 2005. (*Id*., Part 6 at 015.) Also, he noted: "TP [tax payer] is apparently $200,000 to $300,000 behind this quarter. Determination is made to sustain the proposed levy. TP does not appear to be staying current [and] would not return my calls." (*Id*.)

On May 18, 2005 the IRS Office of Appeals sent a Notice of Determination upholding the proposed levy action of the IRS. (Doc. 1, Ex. A. at 2.) The Office of Appeals stated:

> You filed a Collection Due Process request in response to a proposed levy. You requested and were given an opportunity to borrow the funds to pay the tax, while keeping your new tax obligations current. Unfortunately, you have not made timely federal tax deposits for the employment taxes accrued during the quarter ended June 2005. Therefore the determination has been made to sustain the proposed levy.

(*Id*. at 4.) As support for its finding that Emergystat had not kept its "new tax obligations current," it stated:

> You have not stayed current with your federal tax deposits however, and have been unresponsive to Service attempts to discuss this. On April 18, 2005 the Settlement Officer attempted to speak with Mr. Walls about a missing deposit. On April 20, a letter was received that acknowledged that a deposit due in early April was missed. During a conversation with Mr. Walls that day, the explanation provided was that a large insurance payment was due and there was not sufficient money to pay it and the deposit. He said the business would remain current in the future and was warned that this must be done. On April 27, Service records revealed that no deposits had been credited to the June quarter. A call was made to Mr. Walls and he was asked to call the Settlement Officer. He was warned again on his voice mail about staying current. He did

not return the call. On May 2, Service records revealed that two deposits had recently been posted, but the total of $195,397.00 appeared to be significantly less than the amount due. The Settlement Officer called Mr. Walls that day and left a message for him to call, but there was no immediate response. A few days later a FAX was received that said there had been a delay in securing a loan from General Electric Credit. On May 9, Service records revealed that the deposit for the prior week had not been made. The Settlement Officer called Mr. Walls again and requested a call, but no response was received.

Service records currently show that you have deposited $195,397 for the June quarter of 2005 taxes. Your recent employment tax liability has exceeded $1 million per quarter, so you are substantially under deposited. The Revenue Officer and the Settlement Officer have discussed the importance of making timely federal tax deposits with you several times, and you have included the making of timely deposits in each of your payment proposals. Unfortunately, you have not carried through on any of your proposals as you are not paying your current tax and your total liability is growing.

As you are not making current tax deposits you are not eligible for collection alternatives at this time.

(*Id*. at 7-8.)

Also, the Notice of Determination contained a section on "Balancing Efficient Collection and Intrusiveness," which was a short statement that the IRS has balanced the proposed collection action with concerns that the action be no more intrusive than necessary. (*Id*. at 8.) The Office of Appeals noted that Emergystat provided ambulance services to "rural areas across the southeast" and that, in many areas, it was the sole provider of these services. (*Id*. at 4.) Nevertheless, the Office of Appeals held that it had "no choice but to sustain the proposed levy" in light of the missed tax deposits. (*Id*. at 4.)

### III. DISCUSSION

Emergystat contends that the IRS abused its discretion (1) by determining that it "was ineligible for collection alternatives because it was not current on its federal employment tax payments," and (2) by allowing it only a few weeks to obtain financing. (Doc. 14 at 18.) The IRS contends that, based on the administrative record, it did not abuse its discretion. (Doc. 12 at 10.)

"[T]he Internal Revenue Service may collect unpaid taxes by seizing property belonging to a taxpayer." *Shelko v. United States*, No. 5:05-CV-330, 2006 WL 2085472 at *3 (M.D. Ga. July 25, 2006)(citing 26 U.S.C. § 6331). "Before the IRS can issue a levy, it must serve on the taxpayer a final Notice of Intent to Levy. A taxpayer then has the right to request a 'collection due process' hearing within 30 days after the notice." *Id*. Collection due process hearings are conducted by the IRS's Office of Appeals, and the hearing is held before an IRS "officer or employee who has had no prior involvement with respect to the unpaid tax . . . before the first hearing . . . ."[5]  26 U.S.C. § 6330(b)(1) and (3). "At the conclusion of the hearing, the Office of Appeals issues a Notice of Determination setting forth its findings and decision." *Shelko*, 2006 WL 2085472 at *3 (citing Treas. Reg. § 301.6330-1(e)(3) Q & A E8). The taxpayer may appeal the determination to the district court within 30 days. 26 U.S.C. § 6330(d)(1).

---

[5]The taxpayer may waive the requirement that the hearing be conducted by an officer or employee with no prior involvement. 26 U.S.C. § 6330(b)(3).

"The district court generally conducts its review on the administrative record." *Shelko*, 2006 WL 2085472 at *3 (citing *Robinette v. Commissioner of Internal Revenue,* 439 F.3d 455, 459 (8th Cir. 2006). Such review is under an abuse of discretion standard when, as in this case, the underlying tax liability is not at issue. *Id*. (citing *Living Care Alternatives v. United States*, 411 F.3d 621, 626 (6th Cir. 2005)); *see Kindred v. Commissioner of Internal Revenue*, 454 F.3d 688, 694 (7th Cir. 2006). A reviewing court will reverse the decision of the Office of Appeals only when it finds "a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS, lest the judiciary become involved on a daily basis with tax enforcement details that Congress intended to leave with the IRS." *Robinette*, 439 F.3d at 459 (quoting *Olsen v. United States*, 414 F.3d 144, 150 (1st Cir. 2005)(quoting *Living Care Alternatives*, 411 F.3d at 631))(internal quotations omitted).

**A. Determination That Emergystat Ineligible for Collection Alternatives Because it Was Not Current on its Federal Employment Tax Payments**

Emergystat contends:

[I]t appears that the IRS determined that Emergystat was not eligible for collection alternatives based solely on the belief that Emergystat was falling behind on the payment of current withholding taxes. This determination was not only arbitrary, because the IRS failed to balance the need for the efficient collection of taxes against legitimate concern of Emergystat that collection actions be no more intrusive than necessary, but was also mistaken, in that Emergystat paid more in federal employment taxes than was owed during the relevant time.

(Doc. 14 at 18.)

9

The Commissioner may terminate any collection agreement if the taxpayer fails "to pay any other tax liability at the time such liability is due." 26 U.S.C.A. § 6159(b)(4)(B). In this case, the Office of Appeals decided that Emergystat was "not currently eligible for collection alternatives" because it had "not made timely federal tax deposits." (Doc. 1, Ex. A at 3.) Although Emergystat has offered evidence that the total amount paid to the IRS exceeds its tax liability,[6] it has not disputed the evidence that it missed scheduled tax deposits. Under the circumstances, the court finds that Office of Appeals decision to sustain the levy – based on the finding that Emergystat was not making current tax deposits – was not an abuse of discretion resulting in taxpayer abuse or unfairness.

## B. Time Allowed for Financing

As an additional ground for setting aside the levy, Emergystat contends that "to the extent the IRS offer to Emergystat of two or three weeks to obtain financing could be considered a collection alternative, this . . . was an abuse of discretion." (Doc. 14 at 21.) The Office of Appeals Notice of Determination states:

> You requested and were given an opportunity to borrow the funds to pay the tax, while keeping your new tax obligations current. Unfortunately, you have not made timely federal tax deposits for the employment taxes accrued during

---

[6]Emergystat has submitted the affidavit of its Chief Executive Officer, Larry Lunan in support of its assertion that the total amount paid exceeded the total amount due. (Doc. 14, Ex. 1.) Defendant has moved to strike Lunan's deposition, along with Notices of Levy sent to Emergystat after the determination at issue in this case. (Doc. 16.) Because the court does not consider the affidavit to be relevant and because the court's review is limited to the administrative record, the Motion to Strike will be granted.

the quarter ended June 2005. Therefore the determination has been made to sustain the proposed levy.

(Doc. 1, Ex. A at 4.) Based on the finding of the Office of Appeals, the length of time to obtain financing, which was proposed as part of a collection alternative, is irrelevant because the Office of Appeals determined that Emergystat was "not currently eligible for collection alternatives," due to the missed tax deposits. (*See* doc. 1, Ex. A at 3, 4.) Therefore, the court finds no abuse of discretion in the establishment of time limits on Emergystat's efforts to secure financing.

## C.  ADDITIONAL EFFORTS TO OBTAIN FINANCING

Plaintiff offered evidence of potential financing opportunity at the hearing on defendant's Motion for Summary Judgment. Since the hearing, counsel for plaintiff has informed the court that its efforts to obtain financing were unsuccessful.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment, (doc. 12), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 7th day of March, 2007.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE